UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ARMANDO CORONADO, | ) | 1:07-CV-00160 LJO JMD HC |
| Petitioner, | ) | |
| | ) | FINDINGS AND RECOMMENDATION |
| v. | ) | REGARDING PETITION FOR WRIT OF |
| | ) | HABEAS CORPUS |
| KEN CLARKE, | ) | |
| | ) | |
| Respondent. | ) | |

Petitioner Armando Coronado ("Petitioner") is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of California Department of Corrections and Rehabilitation pursuant to a judgment of the Los Angeles County Superior Court. (Pet. at 2; Answer at 1.) Petitioner was convicted in February 1996 of second degree murder and sentenced to fifteen years-to-life (Cal. Penal Code § 187(a)). (Answer Ex. A). Petitioner was sentenced to an additional sixteen months for escaping while pending charges (Cal. Penal Code § 4532 (B)). (Id).

On November 2, 2005, Petitioner appeared before the California Board of Parole Hearings (the "Board") for a parole consideration hearing. (Answer at 3). The Board found Petitioner unsuitable for parole. (Id).

Petitioner challenged the Board's denial of parole, seeking habeas corpus relief before the Los Angeles County Superior Court. (Pet. at 3; Answer at 4). The Superior Court, in the last

1 reasoned decision in this case, denied Petitioner's request for relief on August 4. 2006. (Pet. at 3; Answer Ex. D at 2-3)

On September 28, 2006, Petitioner sought habeas corpus relief before the California Court of Appeal. (Pet. at 3; Answer Ex. E at 2). Petitioner's request was summarily denied by the state appellate court on October 19, 2006. (Pet. at 3)

Petitioner subsequently filed a petition for writ of habeas corpus with the California Supreme Court. (Id.) The California Supreme Court summarily denied the petition on January 17, 2007. (Id.)

On January 29, 2007, Petitioner filed the instant federal petition for writ of habeas corpus. (Pet. at 1).

Petitioner contends, as his sole ground for relief, that the Board's decision was a violation of his right to due process of the law as it was unsupported by reliable evidence.

On August 2, 2007, Respondent filed an answer to the petition.

On August 27, 2007, Petitioner filed a traverse to Respondent's answer.

## FACTUAL BACKGROUND

California regulations permit consideration of the circumstances of the underlying offense in determining whether a prisoner is suitable for parole. *See* Cal. Code Regs., § 2402(c)(1). Thus, the facts of the underlying offense are relevant to a determination of whether there was "some evidence" to support the Board's finding that Petitioner posed a danger to the public safety. The Board read into the record of the parole determination hearing a report summarizing the events of the crime. (Answer Ex. B at 10). The relevant portion of the report, as read into the record by the Board, stated that:

> On August 23rd, 1992, at approximately 6:40 p.m., Heriberto Vasquez, was sitting on the front porch with his friend, Omar Sanchez, house located on Rafael Street in Los Angeles. Omar was in the yard when a vehicle drove up and parked by a neighbor's house. At approximately, there was approximately four or five occupants, possible gang members, in the car. [Petitioner] was observed leaning out the window of the front passenger seat, pointing a small handgun in the direction of Sanchez and Vasquez and fired approximately four shots at them. Sanchez was able to duck for cover. One bullet, however, struck, struck his friend Vasquez in the face. The subjects drove off after the shooting. A rescue unit was dispatched to the crime scene and transported the fallen victim Vasquez to the University of Southern California Medical Center where he laid in critical condition. On August 26, 1992, at 5:15 p.m., he expired. Death was attributed to the single gunshot wound to his head.

(Answer Ex. C at 10-11; 79-80).

The report read into the record also noted that the victim was twelve years old when he was murdered. (Id. at 12).

Petitioner's version of events, as contained in the previous Board report and read into the record, stated that:

> I can't give an excuse for what I've done.  I took the coward's way out to resolve a situation.  I was not a gang member.  I attend church, Victory Outreach, and I went to school.  At the time of the crime, I thought I had reason tot do what I did.  A few weeks ago, friends of Omar and Heriberto went to my grandmother's house at 3:00 a.m. and shot at her apartment, hitting my uncle Leo and almost hitting my grandmother.  When this happened, I felt horrible and scared.  I couldn't protect my family.  I thought at the time, if I go scare these guys responsible for it by shooting at their house, they would leave me and my family alone.  I'm not exactly sure why my house got shot at.  It was either because of a girl or because I used to draw on walls, tagging.  I didn't inten[d] to kill Omar.  If I could, I would trade places with him.  I admitted the crime.  I didn't deny or justify my stupidity and cowardly acts with an innocent boy.  I admitted to police that I couldn't see the two people on the porch.  I was aiming at the top of the house.

(Id. at 12-14)

Petitioner, when questioned about the accuracy of this version of events, agreed that it "was pretty much how it happened." (Id. at 14).

## DISCUSSION

**I.      Jurisdiction**

A person in custody pursuant to the judgment of a state court may petition a district court for relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  While Petitioner's custody arose from a conviction in the Los Angeles County Superior Court, an application for writ of habeas corpus "may be filed in the district court for the district wherein such person is in custody."  28 U.S.C. § 2241(d).  Accordingly, the Court has jurisdiction over the action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's enactment.  Lindh v. Murphy, 521 U.S. 320, 326-327 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499

1  (9th Cir. 1997), *cert. denied*, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97
2  F.3d 751, 769 (5th Cir. 1996), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by*
3  Lindh, 521 U.S. 320 (holding AEDPA only applicable to cases filed after statute's enactment)).  The
4  instant petition was filed on August 10, 2005 and is consequently governed by the provisions of the
5  AEDPA, which became effective April 24, 1996.  Lockyer v. Andrade, 538 U.S. 63, 70 (2003).

**II.     Standard of Review**

**A.     AEDPA Standard of Review**

While Petitioner is not challenging the underlying state court conviction, Petitioner is in custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment.  Thus, 28 U.S.C. § 2254 remains the exclusive vehicle for Petitioner's habeas petition since he satisfies the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir. 2006) (quoting White v. Lambert, 370 F.3d 1002, 1006 (9th Cir. 2004) in holding that, "[s]ection 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying state court conviction'").

Since Petitioner filed his petition after the effective date of AEDPA, his petition for habeas corpus "may be granted only if he demonstrates that the state court decision denying relief was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Irons v. Carey, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1)); *see* Lockyer, 538 U.S. at 70-71.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)).  In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id. (quoting Williams, 592 U.S. at 412).  "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or

involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; *see also* Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner bears the burden of establishing that the state court's decision is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir.1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. *See* Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*, 537 U.S. 859, 123 S.Ct. 231 (2002), *rehearing denied*, 537 U.S. 1149, 123 S.Ct. 955 (2003).

### III.   Review of Petitioner's Claim

Petitioner claims as his sole ground for relief that there was no reliable evidence to support the Board's conclusion that Petitioner posed a current unreasonable danger to the public safety. (Pet. at 5). Therefore, Petitioner contends that the Board's decision acted as a denial of Petitioner's right to due process of the law. Petitioner further alleges that reliance on the commitment offense cannot

constitute some evidence as that factor is static and is based on a vague regulation.

This claim was presented in a petition for writ of habeas corpus to the Los Angeles County Superior Court, which denied the petition in a reasoned opinion. (Answer Ex. F). The Superior Court found that the Board based its decision on several factors, including the commitment offense and the psychological report, in holding that there was some evidence to support the Board's decision. The issue was then raised in petitions for writ of habeas corpus to the California Court of Appeal and California Supreme Court, which summarily denied the petitions. (Answer Ex. G-J). The Court of Appeal and California Supreme Court, by their "silent orders" denying the petitions, are presumed to have denied the claims presented for the same reasons stated in the opinion of the lower court. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

"We analyze a due process claim in two steps. '[T]he first asks whether there exist a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'" Sass, 461 F.3d at 1127. The United States Constitution does not, by itself, create a protected liberty interest in a parole date. Jago v. Van Curen, 454 U.S. 14, 17-21 (1981). However, where a state's statutory scheme for parole contains mandatory language, the presumption exist "that parole release will be granted' when or unless certain designated findings are made, and thereby give rise to a constitutional liberty interest.'" McQuillion v. Duncan, 306 F.3d 895, 901 (9th Cir. 2002) (quoting Greenholtz v. Inmates of Nebraska Penal, 442 U.S. 1, 12 (1979) in holding that California's parole scheme gives rise to a cognizable liberty interest in release on parole). California Penal Code section 3041 contains the requisite mandatory language, thus vesting in California prisoners "whose sentence provide for the possibility of parole with a constitutionally protected liberty interest in the receipt of a parole release date, a liberty interest that is protected by the procedural safeguards of the Due Process Clause." Irons, 505 F.3d at 850; see McQuillion, 306 F.3d at 903; see also Biggs v. Terhune, 334 F.3d 910, 914 (9th Cir. 2003). Even a prisoner who has not yet been granted a parole date has a constitutionally protected liberty interest in a parole date. Sass, 461 F.3d at 1123.

Notwithstanding a prisoner's liberty interest in a parole date, a parole release determination is not subject to all of the due process protections of an adversarial proceeding. Pedro v. Oregon

Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); *see also* Greenholtz, 442 U.S. at 12 (explaining that due process is flexible and calls for procedural protections as demanded by the particular situations). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a Petitioner in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, an inmate is entitled to receive advance written notice of a hearing. Pedro, 825 F.2d at 1399. Additionally, the inmate must be afforded an "opportunity to be heard" and told why "he falls short of qualifying for parole." Greenholtz, 442 U.S. at 16.

"In Superintendent, Mass. Correc. Inst. v. Hill, the Supreme Court held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process' unless the findings of the prison disciplinary board are supported by some evidence in the record.'" Sass, 461 F.3d at 1128 (citations omitted). The Ninth Circuit has held that the same standard of "some evidence" that applies to the revocation of good time also extends to parole determinations. Irons, 505 F.3d at 851. The "some evidence" standard as applied to parole determinations is clearly established Federal law, pursuant to the decisions of the Supreme Court. Id.; Sass, 461 F.3d at 1128-1129. This evidentiary standard prevents arbitrary deprivations of the prisoner's liberty interest without imposing undue administrative burdens or threatening institutional interests. Superintendent v. Hill, 472 U.S. 445, 455 (1985). In assessing "whether a state parole board's suitability determination was supported by 'some evidence' in a habeas case, our analysis is framed by the statutes and regulations governing parole suitability determinations in the relevant state." Irons, 505 F.3d at 851. In reviewing the record and determining whether the "some evidence" standard is met, the Court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence. Sass, 461 F.3d at 1128 (citing Hill, 472 U.S. at 455-456). Rather, the relevant inquiry is whether there is any evidence in the record that could support the Board's decision. Sass, 461 F.3d at 1128.

The discussion of whether "some evidence" exists to support the Board's conclusion, that Petitioner posed a current unreasonable risk of danger to the public safety, is framed by the state's

statutes and regulations governing parole suitability determinations. <u>Irons</u>, 505 F.3d at 851; <u>Briggs</u>, 334 F.3d at 915. California law provides that after an eligible life prisoner has served the minimum term of confinement required by statute, the Board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for" the prisoner. Cal. Penal Code § 3041(b). "[I]f in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison," the prisoner must be found unsuitable and denied parole. Cal. Code Regs., § 2402(a); *see* <u>In re Dannenberg</u>, 34 Cal.4th 1061, 1078, 1080 (Cal. 2005). The Board decides whether a prisoner is too dangerous to be suitable for parole by applying factors set forth in the California Code of Regulations. *See* 15 Cal. Code Regs., tit. 15 § 2402; <u>Irons</u>, 505 F.3d at 851-852; <u>Biggs</u>, 334 F.3d at 915-916. The regulation's criteria states that:

> All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstance which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

15 Cal. Code Regs., tit. 15, § 2402(b)

Factors supporting a finding of unsuitability for parole include (1) the underlying offense was carried out in an "especially heinous, atrocious or cruel manner"; (2) a record, prior to incarceration for the underlying offense, of violence; (3) a history of unstable relationships with others; (4) sadistic sexual offenses; (5) a lengthy history of severe mental problems related to the underlying offense; (6) serious misconduct in jail. Cal. Code Regs., tit. 15, § 2402 (c)(1)-(6); <u>also</u> <u>In re Shaputis</u>, 82 Cal.Rptr.3d 213, 225 n. 14 (Cal. 2008) (holding that "some evidence" standard was met where Petitioner failed to gain insight into his previous violent behavior and to take responsibility for the commitment offense).

While California regulations permit consideration of factors relating to the commitment

offense, the California Supreme Court, in decision that is non-binding on this court, recently stated:

> Accordingly, we conclude that although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

In re Lawrence, 44 Cal.4th 1181,1214 (Cal. 2008)

The Lawrence court further clarified that, "the Board or Governor may base a denial-of-parole decision upon the circumstances of the offense, or upon other immutable facts such as an inmate's criminal history, but some evidence will support such a reliance *only* if those facts support the ultimate conclusion that an inmate *continues* to pose an unreasonable risk to public safety." Id. at 1221 (holding that the relevant inquiry for a reviewing court is whether some evidence supports the decision that the inmate constitutes a current danger to the public safety, not merely whether some evidence confirms the existence of the Board's factual findings).

The Ninth Circuit has additionally expressed reservations about denying parole based solely on immutable factors but permitted such reliance in limited circumstances. Briggs v. Terhune, 334 F.3d 910, 916-917 (9th Cir. 2003)(stating that, "continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct of prior imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation."); Sass, 461 F.3d at 1139-1140 (Reinhardt, J., dissenting); Irons, 505 F.3d at 853-854 (holding, in discussing Sass and Briggs, that "[a]ll we held in those cases and all we hold today, therefore, is that, given the particular circumstances of the offenses in these cases, due process was not violated when these prisoners were deemed unsuitable for parole prior to the expiration of their minimum terms.").

After reviewing the record, this Court concludes that the Board's decision was supported by "some evidence" outside of the commitment offense. Thus, Petitioner's right to due process of the law was not violated as he received all the process due to him under the governing law. *See* Sass, 461 F.3d at 1129. Here, the Board's decision rested on several factors. The factors, as enumerated by the Board, were: 1) the commitment offense was committed in an especially cruel and callous

manner as it was premeditated and the victims were children; 2) Petitioner's previous criminal history and escalating pattern of assaultive behavior; 3) Petitioner's unstable social history; 4) Petitioner's psychological evaluation which revealed that Petitioner had yet to take full responsibility for his offense, displayed an insufficient level of remorse for the victim, and had not come to terms with his involvement in a gang; and 5) Petitioner's lack of viable parole plans. (Answer Ex. C at 79-82, 85-99). The Board commended Petitioner for his positive conduct while institutionalized, applauding Petitioner for going in the right direction. (Id. at 82). The factors the Board commended Petitioner for included: 1) Petitioner's discipline free record while incarcerated; 2) his educational progress ; 3) his participation in self-help programs as a counselor, facilitator, and peer mentor; and 4) the acquisition of vocational skills. (Id. at 82-84).

A factor that weighed heavily in the Board's decision to deny Petitioner parole was his inability to deal with a causative factor of his crime–namely his involvement in the gang. The Board noted that Petitioner's involvement in gang activities was a causative factor for the commitment offense. (Answer Ex. C at 86-87). Dr. Kendall's psychological report, as read into the record by the Board, also expressed the belief that, "[Petitioner]'s involvement in the gang culture was a significant factor in this offense." (Id. at 62). The report specifically stated that, "[t]he major cognitive factors in this offense appear to have been the inmate's involvement in gang activity and his willingness to engage in deviant and antisocial behavior characteristic of the gang culture. According to the [Petitioner], the shooting was a retaliation from a prior gang related shooting." (Id. at 63). Petitioner admitted at the hearing that he had only come to the realization that he was a part of the gang two days prior to the hearing in question. (Id. at 41-42). The Board was thus concerned with Petitioner's failure, until very recently, to come to terms with his prior gang involvement, noting that,"[o]verall, we want you to look at your involvement in the gang. We want you deal with that." (Id. at 96). The Board further stated, when speaking of Petitioner's very recent inability to grasp that he was involved with gang activity, that, "as long as you're in denial, you're not going to go anywhere. You're just digging a deeper and deeper hole for yourself." (Id. at 98). Furthermore, the Board's decision that Petitioner posed a current unreasonable risk of danger to the public safety was supported by the psychological evaluation submitted by Dr. Kendall. The

evaluation, completed in May 2005, reported that Petitioner posed an above average risk of future violence, when compared to the average citizen, in the community. (Id. at 64). This characterization of Petitioner's risk of future violence resulted in part from the Petitioner's failure to take full responsibility for the crime as "[Petitioner] vacillated from admitting that the intended to shoot the victims to stating that he only aimed at the roof of the house. He continually stated his intentions were to only scare the rival gang members, although, it was clear from his actions that he intended to kill this victims." (Id. at 64-65). An additional factor that contributed to Dr. Kendall's finding that Petitioner posed an above average risk for future violence was his difficulty in admitting his involvement with a gang. (Id. at 65). Dr. Kendall's report further found that Petitioner displayed some insight about the harm inflicted upon the victim but that his remorse was focused on how the crime had impacted his life and that a "pervasive lack of concern for the welfare of others" was also a contributing factor in the commitment offense. (Id. at 62-63). The report concluded that, "[Petitioner] is ranked in the above average category for future violence in the community. At this point, he needs to gain more insight into his past criminal behavior, acknowledge his past negative behavior in a more honest fashion, and develop a more comprehensive plan." (Id. at 67).

The psychological report also noted that Petitioner did not possess a well thought out parole release plan, specifically finding that Petitioner had not considered potential obstacles that he would face in the community. (Id. at 60). The record at the hearing supports this conclusion as there was a lack of documentation to confirm Petitioner's planned residency with his grandmother. (Id. at 31-32). Additionally, Petitioner did not have clear employment plans or resources. One of the resource Petitioner stated was Walden House but the Board noted that the letter from Walden House stated Petitioner was eligible but did not explicitly state that he had been accepted into the program. (Id. at 36-37). Petitioner also did not have strong employment possibilities as there was no documentation regarding his post parole employment plans. (Id. at 92).

The psychological report and the parole hearing record reveals that there was some evidence outside of the commitment offense and other static factors that would support a conclusion the Petitioner posed a current unreasonable risk of danger to the public. Specifically, the Board was presented with Petitioner's classification by the clinical psychologist as posing an above average risk

for future violence if released into the community, his lack of viable parole plans, his denial regarding a causative factor in his commission of the crime (namely his involvement with a gang), Petitioner's insufficient remorse and consideration of the obstacles he would face in the community, and his failure to take full responsibility for the crime. This evidence taken as a whole is sufficient to show that it would not be unreasonable for a court to conclude that there was "some evidence" supporting the Board's determination that Petitioner posed an unreasonable risk of danger to society if released from prison. *See* Cal. Code Regs., tit. 15, § 2402(b) ("Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability").

Additionally, the Board's reliance on static factors is not violative of Petitioner's right to due process of the law. The Ninth Circuit in Irons held that sole reliance on the commitment offense comports with the requirements of due process where the parole board's determination of unsuitability came prior to the prisoner serving the minimum number of years required by their sentence. Irons, 505 F.3d at 853. Irons would suggest that even if the Board had relied only on static factors in determining Petitioner was unsuitable for parole, Petitioner's due process rights were not violated. Petitioner was convicted on February 7, 1996 of the commitment offense and sentenced to fifteen years-to-life. (Answer Ex. A). Thus, Petitioner would have reached his minimum sentence in 2011, well after the November 2005 hearing he is currently challenging. Consequently, while this Court finds that there was some evidence to support the Board's decision outside of static factors, the Court notes that in Petitioner's case reliance on such factors would not have violated his right to due process under the governing precedent.

Petitioner also alleges that the Board's decision cannot rely on the gravity of the offense as the regulation that permits such reliance is unconstitutionally vague. Petitioner specifically challenges the validity of Title 15 of the California Code of Regulations § 2402(c)(1). Section 2402(c)(1) permits consideration of the commitment offense as a factor showing unsuitability for parole if "the prisoner committed the offense in an especially heinous, atrocious or cruel manner." Id. The regulation goes on to list five factors to consider in determining whether the offense was committed in a "heinous, atrocious or cruel manner." Id. Those five factors include whether

multiple victims were attacked, injured or killed in the same or separate incidents; the offense was carried out in a dispassionate and calculated manner; the victim was abused, defiled or mutilated during or after the offense; the offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering; the motive for the crime is inexplicable or very trivial in relation to the offense. Id. at (A)-(E).

"The Due Process Clause does not require the same precision in the drafting of parole release statutes as is required in the drafting of penal laws." Hess v. Board of Parole and Post-Prison Supervision, 514 F.3d 909, 913-14 (9th Cir. 2008). Thus, as the term "especially heinous, atrocious, or cruel" is limited and defined by the five factors set forth in subsection (A)-(E), Section 2404 is not constitutionally vague and Petitioner's facial challenge to this regulation as unconstitutional must be rejected. See Ortiz v. Ayers, No. 06-5368C, 2008 WL 2051051 at *5 (N.D. Cal. 2008); Neblett v. Ornoski, No. 05-4228C, 2008 WL 698477 at *9 (N.D. Cal. 2008); Carl v. Knowles, No. 04-1796C, 2008 WL 3916005 at * 8 (E.D. Cal. 2008); Stipner v. Ayers, No. 05-5400C, 2008 WL 9006161 at *5 (N.D. Cal. 2008).

Additionally, as noted above, the Board's finding that Petitioner posed a current unreasonable risk of danger to the public was supported by some evidence apart from the commitment offense. See Sass, 461 F.3d at 1128-1129 (holding that petitioner's prior offenses and the gravity of his commitment offenses constituted some evidence to support the Board's decision on parole unsuitability). Thus, Petitioner's claim that there was no evidence to support the Board's conclusion is rejected as without merit.

## RECOMMENDATION

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Lawrence J. O' Neill, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written

1  objections with the court and serve a copy on all parties.  Such a document should be captioned
2  "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall
3  be served and filed within ten (10) court days (plus three days if served by mail) after service of the
4  objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. §
5  636(b)(1)(c).  The parties are advised that failure to file objections within the specified time may
6  waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:    October 8, 2008**              **/s/ John M. Dixon**
                                           UNITED STATES MAGISTRATE JUDGE